2019 IL App (2d) 161114
No. 2-16-1114
Opinion filed July 1, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CF-788 |
| DANIEL A. MAILLET, | ) ) | Honorable Robbin J. Stuckert, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Zenoff and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1 Following a bench trial, defendant, Daniel A. Maillet, was found guilty of two counts of unauthorized video recording. Count I alleged that, on or about November 12, 2012, defendant knowingly made a video recording of B.P., who was under the age of 18 at the time, in B.P.'s residence, without her consent, in violation of section 26-4(a-5) of the Criminal Code of 2012 (Code) (720 ILCS 5/26-4(a-5) (West 2012)). Count II alleged that, on or about November 12, 2012, defendant knowingly made a video recording of B.P., without her consent, while B.P. was in a restroom, in violation of section 26-4(a) of the Code (*id.* § 26-4(a)). The trial court merged count II into count I and sentenced defendant to 30 months' probation and 50 hours of community service. Defendant appeals, contending that his conviction rests upon the trial court's erroneous

construction of sections 26-4(a) and 26-4(a-5) and that both sections are unconstitutional on first amendment and due process grounds.   We affirm.

¶ 2                                    I. FACTS

¶ 3     Defendant was indicted on six counts.   In addition to the charges of unauthorized video recording in counts I and II, defendant was charged with possession of child pornography, attempted unlawful possession of child pornography, child pornography and attempted child pornography.   Defendant moved to dismiss the counts on various bases, including that counts I and II were unconstitutional.   All of his motions to dismiss were denied.

¶ 4     B.P. testified at trial that she lived in a single family residence in De Kalb with her mother, Tracie Maillet, and two sisters.   On November 21, 2012, defendant, B.P.'s stepfather, also lived at the residence.   On November 21, 2012, when she was 15 years old, she told defendant that she was going to take a shower, because defendant also intended to take a shower and, although the home had two bathrooms, only one of the showers was working.   Defendant took his shower first and, when he had finished, he told B.P. to go ahead and take her shower.   Defendant left the house while B.P. was preparing to shower.   After she turned on the water in the shower, B.P. turned and noticed an iPod "kind of covered by clothes" on top of a laundry basket in the bedroom, by the bathroom door.

¶ 5     B.P. watched the video recording and then hid it in her room.   On the recording, B.P. saw defendant setting it up followed by a long period of time in which nothing happened.   After that, she saw herself walking into the bathroom and turning on the shower.   B.P. testified that she did not know that the bathroom was being recorded before she discovered the iPod.   She and defendant had never discussed making video recordings.

¶ 6    B.P. further testified that, when defendant returned home, he spoke to her through her locked bedroom door, telling her that he knew that she had found the recording and asking her to let him in so that they could talk about it.    Once B.P. opened the door, defendant told her "that he knew it was wrong and he shouldn't have done it and if I tell anyone [about it] he won't be able to see his daughter again and if I don't tell anyone he'll fix the other bathroom so it will never happen again."    After speaking with B.P., defendant left for work.    When Tracie came home, B.P. told her what had happened.

¶ 7    Tracie testified that she had been married to defendant for six years but that they were now separated.    Defendant is the biological father of one of her daughters.

¶ 8    When Tracie returned home from work on November 21, 2012, B.P. told Tracie that she had been video recorded by defendant.    Tracie viewed the recording on the iPod.    After she saw it, Tracie called B.P.'s father, then she called defendant, and then she called the police. Defendant told her that he knew that she was going to call the police and that she should go ahead and call them.    He told her that he was sorry and knew that Tracie was never going to forgive him.    Tracie identified a State's exhibit as a text message she had received from defendant on November 21, 2012, stating:    "If you call the cops, let me know so I can turn myself in.    Saying I'm sorry is not going to fix this.    What I did is wrong.    I know I lost your respect and the girls' respect."

¶ 9    Detective Craig Woodruff of the De Kalb Police Department was called to the Maillet residence on November 21, 2012.    Tracie reported what had happened to her daughter and she gave Woodruff the iPod, telling him that it belonged to Tracie.    While at the residence, Woodruff received a call from dispatch reporting that defendant was at the police station.    At the station, defendant admitted that he had video recorded B.P. while she was in the bathroom.

¶ 10    The trial court found defendant guilty of count I (*id.* § 26-4(a-5)) and count II (*id.* § 26-4(a)) but not guilty of the remaining counts with which he was charged.

¶ 11    Defendant filed a motion to reconsider, which was denied.    The trial court merged count II into count I and sentenced defendant.    Defendant timely appeals.

¶ 12                                II. ANALYSIS

¶ 13                              A. Section 26-4(a-5)

¶ 14    The two provisions of the unauthorized-video-recording statute at issue on appeal prohibit a person from knowingly making a video recording of another person, without that person's consent, in specific places.    The first provision at issue, section 26-4(a-5), prohibits "any person [from] knowingly mak[ing] a video record or transmit[ting] live video of another person in that other person's residence without that person's consent."    *Id.* § 26-4(a-5). Defendant argues that the phrase "that other person's residence" should not apply to video recordings in a defendant's own residence.    In other words, according to defendant, a proper reading of section 26-4(a-5) is that it prohibits recording without another person's consent in that person's residence but does not apply when that residence is also the defendant's residence.

¶ 15    The State disagrees, asserting that the legislative intent is to protect the privacy of the person being recorded in that person's own home and that this privacy protection should be afforded regardless of whether that person lives in the same residence as the person who makes the video recording.

¶ 16    Defendant's contention raises an issue of statutory construction, which is subject to *de novo* review.    See *People v. Bradford*, 2016 IL 118674, ¶ 15.    The primary rule of statutory construction is to ascertain and give effect to the legislature's intent.    To determine this, a court first looks to the statute's language, according to its plain and commonly understood meaning.

If possible, the court must give effect to every word, clause, and sentence. It must not read the statute so as to render any part of it inoperative, superfluous, or insignificant. It must not depart from the statute's plain language by reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Ellis*, 199 Ill. 2d 28, 39 (2002).

¶ 17    Pursuant to the rule of lenity, ambiguous criminal statutes will generally be construed in a defendant's favor. However, the rule of lenity is subordinate to a court's obligation to determine the legislative intent and should not be applied so rigidly as to defeat the legislative intent. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 18    Although defendant properly notes that the language of the statute must be given its plain and ordinary meaning, he nevertheless ignores this maxim. Instead he notes that the statutory definitions provide no aid in understanding the phrase "that other person's residence," that the legislative history is also unenlightening, and that a similar phrase occurs in only one other Illinois statute. He thus concludes that the phrase "that other person's residence" must exclude the defendant's residence.

¶ 19    Defendant cites the cross-burning statute, which provides that one acts with " 'intent to intimidate' " when placing "another person in fear of physical injury or fear of damage to *that other person's property.*" (Emphasis added.) 720 ILCS 5/12-7.6(c) (West 2012). Defendant surmises that the phrase "that other person's property" must exclude the defendant's property. Defendant asserts that to read the language otherwise would suggest that the legislature intended the absurd result of prohibiting a defendant from seeking to intimidate himself by damaging his own property. See *People v. Hunter*, 2017 IL 121306, ¶ 28 (courts must construe statutes to avoid absurd results that the legislature could not have intended). Defendant's conclusion is

inapt, as the statute prohibits intimidation by placing "another person" in fear of injury or damage to "that other person's property."

¶ 20    Defendant cites *People v. Ellis*, 199 Ill. 2d 28 (2002), as being highly instructive regarding legislative intent, and the State finds the case instructive as well.    In *Ellis*, the supreme court was asked to decide whether Illinois would "recognize the 'exculpatory no' doctrine as an exception to criminal liability for obstruction of justice pursuant to section 31-4(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/31-4 (West 1996))."    *Id.* at 30.    Section 31-4(a) provided (as it does now) that a person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly "furnishes false information."    720 ILCS 5/31-4 (West 1996).

¶ 21    The State alleged that the defendant violated section 31-4(a) when he furnished false information in an effort to obstruct his own apprehension or prosecution.    The State argued that the phrase "any person" was expansive and literally meant any person, including the declarant of the false statement.    The defendant responded that the legislature could not have intended that the phrase "any person" include the declarant of the false statement.    *Ellis*, 199 Ill. 2d at 39.

¶ 22    The court found that the phrase "any person" had a commonly understood and ordinary meaning.    It determined that the phrase was expansive and therefore must include a person who makes false statements to obstruct his or her own apprehension or prosecution.    The court found that any other construction would depart from the well-settled rule that courts must not depart from a statute's plain language by reading into it exceptions that the legislature did not express. *Id.* at 39-40.    The court held that, if the legislature had intended to exclude a defendant from liability for false statements regarding his or her own identity, it could have easily used alternative terms such as "another person" or "of another" or "separate person."    But the

legislature did not do so. The court stated: "[W]e are not in a position to assume that the statute means something other than what it says." *Id.* at 40.

¶ 23 Here, the plain language of the statute clearly and unambiguously refers only to the victim's residence. The prospect that a defendant lives in the same residence is not addressed in the statute. The legislature certainly could have included language to except this situation, as it did in the stalking statute. In that statute, the legislature specified that the surveillance must occur at various places the victim would be or at a "residence other than the residence of the defendant." 720 ILCS 5/12-7.3(c)(7) (West 2012). Defendant's approach would read an exception into section 26-4(a-5) that simply is not there, which violates a major tenet of statutory interpretation. See *Ellis*, 199 Ill. 2d at 39. Since the plain language of the statute is clear and unambiguous, the rule of lenity does not apply.

¶ 24 The legislature's intent undoubtedly was to protect the privacy rights of the person who was video recorded without that person's consent in that person's residence, where that person would have an increased expectation of privacy, regardless of the residence of the person who made the recording. Defendant's interpretation would give someone free rein to video record a person who lives in the same residence, without his or her consent and in various compromising situations, which would fly in the face of the legislature's intent and produce an absurd result.

¶ 25                          B. Section 26-4(a)

¶ 26 Section 26-4(a) prohibits "any persons [from] knowingly mak[ing] a video record or transmit[ting] live video of another person without that person's consent in a restroom, tanning bed, tanning salon, locker room, changing room, or hotel bedroom." 720 ILCS 5/26-4(a) (West 2012).

¶ 27   Defendant argues that the trial court improperly found him guilty of unauthorized video recording under this statute, because the term "restroom" should be interpreted to apply only to public restrooms, not restrooms in a person's own residence.   Defendant argues that the term "restroom" should be read in context and that the other locations listed in the statute— a tanning bed, tanning salon, locker room, changing room, or hotel bedroom—are not ordinarily found in private residences.   We reject this argument.

¶ 28   As the State points out, the places listed in section 26-4(a) are not exclusively "public" places but are places where total or partial nudity is likely and thus there is a heightened expectation of privacy.   A tanning bed need not be located in a public place, and a hotel room is not a public place.   The more commonsense mutual feature of the locations listed is that they are all quintessentially private places.   The plain language of the statute does not say "public" restroom, and the legislature could have easily included the word "public."   Again, we cannot read into the law a limitation that is not there.   See *Ellis*, 199 Ill. 2d at 39.   The legislative intent to protect a person's privacy while using a restroom would be unnecessarily compromised by allowing surreptitious video recording of that person without his or her consent while using a nonpublic restroom.   We find that the statute includes restrooms in a person's home, because the intent is to protect the person's privacy in those places where there is a heightened expectation of privacy.

¶ 29                                C. Constitutional Claims

¶ 30   Defendant also challenges sections 26-4(a-5) and 26-4(a) on first amendment and due process grounds.   The constitutionality of a statute is a question of law, which we review *de novo*.   *People v. Madrigal*, 241 Ill. 2d 463, 466 (2011).   There is a strong presumption that a statute is constitutional, and the party challenging its constitutionality bears the burden of clearly

establishing that it violates the constitution. *People v. Kitch*, 239 Ill. 2d 452, 466 (2011). This court has a duty to construe a statute in a manner that upholds its constitutionality, if reasonably possible. *People v. Hollins*, 2012 IL 112754, ¶ 13.

¶ 31                                       1. First Amendment

¶ 32     We first address defendant's claim that sections 26-4(a-5) and 26-4(a) violate the first amendment in that they are overbroad because a substantial number of their applications are unconstitutional.

¶ 33     "Under the First Amendment overbreadth doctrine, a party may bring a facial challenge against a statute, even though it is not unconstitutional as applied to that particular party, because 'the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.' " *Free Speech Coalition, Inc. v. Attorney General*, 677 F.3d 519, 537 (3rd Cir. 2012) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). Invalidating a statute on first amendment overbreadth grounds, however, is " 'strong medicine' " and should be done " 'sparingly and only as a last resort.' " *Id.* (quoting *Broadrick*, 413 U.S. at 613). Therefore, "a law may be invalidated as overbroad only if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.' " *Id.* (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

¶ 34     The first step in an overbreadth analysis is to interpret the challenged statute, because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). Defendant acknowledges that sections 26-4(a-5) and 26-4(a) prohibit the nonconsensual video recording of another person in that person's residence and in specific other places—restrooms, locker rooms,

tanning beds, tanning salons, and hotel bedrooms—where the expectation of privacy is heightened.

¶ 35    We note that both sections contain the *scienter* requirement that the recording be done "knowingly."   Both sections prohibit a person from "knowingly" video recording another person, with knowledge that the other person has not consented to such recording—either expressly or impliedly—and with knowledge that the other person is in one of the places enumerated in either section.   *Cf. People v. Ceja*, 204 Ill. 2d 332, 349 (2003) (holding that consent under the eavesdropping statute "may be either express or implied").

¶ 36    The statutes at issue do not target any specific message, idea, or subject matter.   Thus, as defendant acknowledges, the statutes are content neutral and subject to intermediate scrutiny. See *American Civil Liberties Union v. Alvarez*, 679 F.3d 583, 603 (7th Cir. 2012).

¶ 37    A content-neutral regulation will be sustained under the first amendment if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests.   *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 520 U.S. 180, 189 (1997); *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968).   In *American Civil Liberties Union*, 679 F.3d at 604-05 (citing *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989)), the court noted that intermediate scrutiny requires a fit between the legislature's ends and the means chosen to achieve those ends, a fit that is not necessarily perfect but reasonable.

¶ 38    Undoubtedly, a person has a heightened expectation of privacy in a restroom, tanning bed, tanning salon, locker room, changing room, or hotel bedroom and in that person's residence. The protection of that expectation of privacy is an important governmental interest, and the

prohibition of nonconsensual video recording in those areas is substantially related to that governmental interest. See *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 308 (2008).

¶ 39    Defendant argues that, while any number of examples is possible, one need consider only that a person who takes an innocent selfie in his or her own living room with her fully clothed daughter in the background could be charged with a Class 4 felony. However, the question under the overbreadth doctrine is not whether a statute can be interpreted to apply to *any* constitutionally protected conduct, but whether it will reach a *substantial amount* of such conduct. *People v. Clark*, 2014 IL 115776, ¶ 11; see *Williams*, 553 U.S. at 301 (stating that such arguments "demonstrate nothing so forcefully as the tendency of our overbreadth doctrine to summon forth an endless stream of fanciful hypotheticals"). As elucidated by the Supreme Court, a particular application of an otherwise valid statute to constitutionally protected conduct can "of course be the subject of an as-applied challenge." *Williams*, 553 U.S. at 302. But "[t]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." (Internal quotation marks omitted.) *Id.* at 303

¶ 40                              2. Due Process

¶ 41    Finally, defendant contends that sections 26-4(a-5) and 26-4(a) violate substantive due process because they are broadly drawn prohibitions that potentially subject wholly innocent conduct to criminal penalties without requiring a culpable mental state beyond mere knowledge.

¶ 42    Under the banner of its police power, the legislature has wide discretion to fashion penalties for criminal offenses, but this discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law. *People v. Wright*, 194 Ill. 2d 1, 24 (2000). When the challenged statute does not affect a fundamental constitutional right,

the appropriate test for determining its constitutionality is the highly deferential rational-basis test. *People v. Carpenter*, 228 Ill. 2d 250, 267 (2008). Under that test, a statute will be sustained if it " 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24 (quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991)).

¶ 43    Accordingly, we must first determine the purpose of sections 26-4(a-5) and 26-4(a) in order to assess whether their prohibitions reasonably implement that purpose. See *Madrigal*, 241 Ill. 2d at 466-67. As previously stated, the sections prohibit the nonconsensual video recording of another person in that person's residence and in specific other places, where the expectation of privacy is heightened.

¶ 44    As defendant notes, section 26-4(a) prohibits "knowingly" making a video recording "of another person without that person's consent in a restroom, tanning bed, tanning salon, locker room, changing room, or hotel bedroom" (720 ILCS 5/26-4(a) (West 2012)) and section 26-4(a-5) prohibits "knowingly" making a video recording "of another person in that other person's residence without that person's consent" (*id.* § 26-4(a-5)). Although these provisions are designed to prevent intrusions upon privacy, defendant maintains, they have the effect of sweeping in a wide range of innocent conduct. Defendant points out that, by their own terms, these provisions broadly prohibit the video recording of any person in any of the specific locations. The required elements are the video recording, the lack of consent, the location, and the defendant's mere knowledge, but there is no requirement that the recording involve minors, sex acts, or obscenity. Nor must the recording be disseminated or the person recorded be identified. Defendant also notes that the provisions do not require that the person recorded object to the recording; rather "those provisions essentially use the location of recording plus

lack of expressed prior consent by the person being recorded as a proxy for an 'objectionable' (and consequently criminal) recording." Defendant contends that, by simply prohibiting the video recording of a person in a specific location, regardless of what is actually being depicted, the provisions subject wholly innocent conduct to criminal penalties without requiring a culpable mental state beyond mere knowledge.

¶ 45 Defendant compares sections 26-4(a-5) and 26-4(a) to other statutes found unconstitutional on substantive due process grounds, such as the identity-theft statute found unconstitutional by the Illinois Supreme Court in *Madrigal*. See 720 ILCS 5/16G-15(a)(7) (West 2008). There, the court held that a statute violates due process if it potentially subjects wholly innocent conduct to criminal penalties without requiring a culpable mental state beyond mere knowledge. *Madrigal*, 241 Ill. 2d at 467-68. "Simply put, this court has held that in such cases, a statute fails the rational basis test because it does not represent a reasonable method of preventing the targeted conduct." *Id.* at 468.

¶ 46 Section 16G-15(a)(7) of the Criminal Code of 1961 prohibited knowingly using any " '*personal identification information* or personal identification document of another for the purpose of gaining access to any record of the actions taken, communications made or received, or other activities or transactions of that person, without the prior express permission of that person.' " (Emphasis in original.) *Id.* at 471 (quoting 720 ILCS 5/16G-15(a)(7) (West 2008)). "Personal identifying information" was defined to include everything from a person's name, address, date of birth, or telephone number to more confidential identifying information, such as a bank account number, social security number, or credit card number. *Id.* (quoting 720 ILCS 5/16G-10(b) (West 2008)). Because any one of these pieces of information qualified as "personal identifying information" for purposes of section 16G-15(a)(7), a person who simply

used someone's name to gain access to any record of that person's actions, communications, or other activities, without that person's prior express permission, was guilty of a Class 3 felony. *Id.*

¶ 47 The court held that section 16G-15(a)(7)'s sweeping language did not survive rational-basis review, as it would potentially punish as a felony a broad array of wholly innocent conduct, such as searching a friend's name on the Internet to see how that friend placed in the Chicago Marathon, calling a car repair shop to see if a spouse's car is ready to be picked up, calling a friend's place of business to see if that friend is at work, and many other, innocent, everyday actions that the legislature could not have intended to punish. *Id.* at 471-72. The court found that the problem with the statute was that it lacked "criminal intent, criminal knowledge, or a criminal purpose" as an element of the offense. *Id.* at 470-71. Accordingly, the court held that the statute was not "a rational way of addressing the problem of identity theft," because its broad language encompassed "a significant amount of wholly innocent conduct not related to the statute's purpose." *Id.* at 473.

¶ 48 The *Madrigal* court distinguished the case from *People v. Williams*, 235 Ill. 2d 178 (2009). In that case, the court upheld the unlawful-use-of-unidentified-sound-recordings statute, contained in section 16-8 of the Criminal Code of 1961 (720 ILCS 5/16-8 (West 2004)), against a substantive due process challenge. *Madrigal*, 241 Ill. 2d at 476. The *Williams* court found that the statute " 'capture[d] the precise activities that it was meant to punish.' " *Id.* (quoting *Williams*, 235 Ill. 2d at 209). The *Williams* court rejected the notion that section 16-8 potentially punished any innocent conduct (*Williams*, 235 Ill. 2d at 212), and it further noted that including any additional intent elements would defeat the legislative purpose in enacting the statute (*Id.* at 210-11). In contrast to the statute in *Williams*, the *Madrigal* court noted that

section 16G-15(a)(7) potentially punished a wide array of innocent conduct beyond what the legislature could have reasonably meant to punish. *Madrigal*, 241 Ill. 2d at 476.

¶ 49     In this case, sections 26-4(a-5) and 26-4(a) are far more narrowly suited to their purpose of protecting personal privacy than was the identity-theft statute in *Madrigal.*     The identity-theft statute prohibited the use of *any* personal identification information of another person for the purpose of gaining access to *any* record of the actions taken, communications made or received, or other activities or transactions of that person.     *Id.* at 469-70.     The language broadly applied to an immense number of innocuous activities wholly unconnected to the statute's legitimate purpose of preventing identity theft.     On the other hand, here, sections 26-4(a-5) and 26-4(a) "capture[ ] the precise activities that [they were] meant to punish" (see *Williams*, 235 Ill. 2d at 209): the nonconsensual video recording of a person in a location where he or she has a heightened expectation of privacy.

¶ 50     Defendant argues that sections 26-4(a-5) and 26-4(a) do not require criminal intent or criminal knowledge.   We disagree.   The statute at issue in *Madrigal* lacked this element because, although the offender was required to knowingly use the personal identification information of another, there was no requirement that it be used with knowledge that it would harm that person.   The statute thus prohibited a person from knowingly undertaking a slew of inoffensive actions that a majority of us likely perform every day.   By distinction, sections 26-4(a-5) and 26-4(a) forbid a person from not merely knowingly making a video recording of another person but doing so with the knowledge that that person is in a place where that person has a heightened expectation of privacy and with the knowledge that that person has not consented, either expressly or impliedly, to being recorded.   At the very least, the sections

require criminal knowledge that the offender's actions are likely to invade another person's substantial privacy interests.

¶ 51    Lack of consent is crucial to this criminal knowledge.   Defendant argues that sections 26-4(a-5) and 26-4(a) require that the recording be made without express consent, thus criminalizing potentially innocent conduct.   But neither provision requires a lack of express consent.   Consent may be express or implied and the State must prove that a defendant knew that the person he or she was recording did not expressly or impliedly consent.

¶ 52    In sum, defendant has not shown that sections 26-4(a-5) and 26-4(a) potentially punish a significant amount of wholly innocent conduct not related to their purpose of protecting personal privacy.   See *id.* at 471, 473.   Accordingly, defendant's facial substantive due process challenge fails.

¶ 53                                  III. CONCLUSION

¶ 54    For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.   We grant to the State the statutory assessment of $50 against defendant as costs of this appeal.   See 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 55    Affirmed.