**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180399-U

Order filed May 14, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0399 Circuit No. 14-CF-203 |
| JOHN T. McCAVITT, | ) ) ) | Honorable Kevin W. Lyons |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justice Daugherity concurred in the judgment.
Justice Schmidt specially concurred.

_____

**ORDER**

¶ 1    *Held*:    Defendant was not denied his rights to substantive due process or a speedy trial. The unauthorized recording statute did not violate due process. Defendant was tried within the speedy trial term. Defendant's claims of effective assistance of counsel are better suited for a collateral proceeding where an adequate factual record may be established.

¶ 2          Defendant John McCavitt was found guilty following a bench trial of two counts of unauthorized videotaping and sentenced to a one-year term of imprisonment. He appealed. We affirm.

¶ 3                                              BACKGROUND

¶ 4          Defendant John McCavitt, a former Peoria police officer, was charged with two counts of unauthorized video recording for taping Rachel G. and Whitney S. in the bathroom of his house without their knowledge. 720 ILCS 5/26-4(a) (West 2016). The charges resulted from the search of a personal computer seized from McCavitt's house during the execution of a search warrant. Also seized were two cameras disguised as Kleenex boxes. The warrant was executed as part of the investigation into criminal sexual assault accusations against McCavitt. After he was acquitted of those charges, an internal affairs investigation was initiated by McCavitt's employer, the Peoria Police Department. A subsequent search of McCavitt's computer revealed contraband material, including recordings of Rachel and Whitney in McCavitt's bathroom, as well as instances of child pornography. At that point, the investigator stopped the search and obtained a warrant.

¶ 5          McCavitt was arrested on both child pornography and unauthorized video recording charges and bonded out. The State elected to proceed with the child pornography counts first and the instant case tracked the child pornography case. At the trial on the child pornography charges, the trial court denied McCavitt's motion to suppress the evidence from his computer, finding that the search did not violate McCavitt's fourth amendment rights. McCavitt was found guilty in the child pornography case, surrendered in exoneration of his bond, and remained in custody on the unauthorized recording charges.

¶ 6          On December 1, 2017, after he was sentenced in the child pornography case, McCavitt made a speedy trial demand on the instant charges. For speedy trial purposes, the State sought a

2

jury trial date of February 26, 2018, and a review conference was set for February 15, 2018. The State commented that all continuances until the current date had been at the defendant's request. The defendant disagreed, asserting the speedy trial clock would begin on that date, December 1, 2017. At the February 15, 2018, review setting, McCavitt opted to proceed with a bench trial and entered a jury waiver. The February 26 jury trial date was striken and a bench trial date was set for April 4, 2018, on agreement of the parties. The State calculated that it was at 87 days for speedy trial purposes. On April 4, 2018, at the bench trial setting, McCavitt filed a motion to dismiss, arguing, in part, that the State violated his speedy trial right. The trial court denied McCavitt's motion to dismiss, finding that the trial was within the 160-day speedy trial term for a defendant in simultaneous custody.

¶ 7 A bench trial took place. The parties submitted two stipulations. Trooper Keri Engler would testify that she retrieved the computer tower and Kleenex box cameras from McCavitt's home and entered them into police evidence. Jeff Avery, a Peoria County Sheriff's Department detective, would testify that he was a forensic examiner who used an EnCase program to download an exact and unalterable image of McCavitt's computer hard drive.

¶ 8 Rachel G. testified. She was a high school art teacher who had a friendship with McCavitt's former girlfriend, Rachel Broquard. She visited Broquard in March 2013, when Broquard was living with McCavitt. She stayed two or three nights in the guestroom in the home Broquard and McCavitt shared. She identified the video recordings that showed her using the toilet and stepping out of the shower. She was unaware she was being recorded. She expected to have a private moment in the bathroom. On cross-examination, she said she did not recall the Kleenex box cameras.

¶ 9     Whitney S. testified. She was employed as a teacher's assistant. McCavitt was a friend of her boyfriend, who was also a Peoria police officer. She visited McCavitt's house four or five times with her boyfriend during 2013. She identified the recording that showed her using the toilet in McCavitt's bathroom. She did not consent to the recordings and was not aware she was being recorded. She felt "extremely violated." On cross-examination, she stated that she did not notice the Kleenex boxes in the bathroom.

¶ 10    Broquard testified. She was a nurse practitioner. McCavitt was her former boyfriend. They dated from 2010 to July 2014 and lived together from February 2012 through October 2014. She identified Rachel G. and Whitney S. on the recordings and said the videos were taken in the bathroom at the house she shared with McCavitt. She recalled the Kleenex boxes in the bathroom, stating that they would be placed out when company came. She did not put them in the bathroom. On cross-examination, she acknowledged that she was given a grant of transactional immunity in exchange for her participation in the investigation of this case.

¶ 11    Ken Mullen, an Illinois State Police officer, testified. He executed the search warrant at McCavitt's house around 8 p.m. on July 17, 2014. Approximately 10 law enforcement officers were at the residence to serve the warrant. They knocked and announced, but McCavitt did not answer the door. They called him on his cell phone, but he did not answer. They did not kick down the door to serve the warrant because McCavitt was a police officer, and they were not sure what weapons he had inside. The officers were let into the house around 10:30 p.m. after McCavitt's attorney arrived. Upon entry, law enforcement seized McCavitt's computer and two Kleenex box cameras. The computer was given to Avery to analyze regarding the sexual assault accusations against McCavitt.

¶ 12 James Feehan, a detective with the City of Peoria Police Department, testified that he specialized in digital forensics, and he was accepted as an expert in the field. He was asked by the police department to perform an internal investigation of McCavitt's computer after McCavitt was acquitted of the criminal sexual assault charges. Feehan could not proceed with the investigation until the criminal case was concluded per department practice. While investigating the criminal sexual assault charges, he found images of Whitney S. and Rachel G. in recordings placed in the recycle bin in McCavitt's computer. The computer data indicated the recordings were placed in the recycle bin at 9:19 p.m. on July 17, when the police were outside McCavitt's house attempting to execute the search warrant. A computer wiping program was set to erase all the files, but the police seized the computer before the erasure was completed. In Feehan's opinion, the recordings were made from the cameras secreted in the Kleenex boxes, although he did not examine the cameras.

¶ 13 The State rested and the defense sought a directed verdict, which the court denied. The defense submitted into evidence a copy of Broquard's immunity agreement and rested. McCavitt then moved for a judgment of acquittal, which the trial court denied. Following closing arguments, the trial court found McCavitt guilty on both counts. The court's findings stated that restrooms in private homes were included in the statutory prohibitions against unauthorized recordings, that McCavitt attempted to destroy evidence, and that Rachel G. and Whitney S. were credible witnesses. McCavitt sought reconsideration in a posttrial motion. The trial court denied the motion and sentenced him to two one-year terms of imprisonment, to be served concurrently, on June 27, 2018. McCavitt timely appealed on June 29, 2018. We allowed his amended notice of appeal to be filed on February 7, 2019.

¶ 14                                      ANALYSIS

¶ 15     McCavitt raises three issues on appeal. He argues that he was denied his rights to (1) substantive due process, (2) a speedy trial, and (3) effective assistance of counsel.

¶ 16     The first issue we address is whether McCavitt's substantive due process rights were violated. He argues that section 26-4(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/2-26-4(a) (West 2016)) is violative of substantive due process. Specifically, McCavitt asserts that, in addition to preventing privacy intrusions, the statute "subjects wholly innocent conduct to a criminal penalty without requiring a culpable mental state beyond mere knowledge."

¶ 17     Section 26-4(a) of the Code provides: "It is unlawful for any person to knowingly make a video record *** of another person without that person's consent in a restroom, tanning bed, tanning salon, locker room, changing room, or hotel bedroom." 720 ILCS 5/26-4(a) (West 2016). The statute includes several exceptions that do not apply. See *id.* §§ 26-4(b), (c).

¶ 18     A statute is presumed to be constitutional and the burden of proving its unconstitutionality is on the party challenging the statute. *People v. Carpenter*, 228 Ill. 2d 250, 267 (2008). When a fundamental constitutional right is not affected by the statute, courts employ the rational basis test to determine whether the statute complies with substantive due process. *Id.* "A statute will be upheld under that test where 'it "bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desire objective." ' " *Id.* at 267-68 (quoting *People v. Wright*, 194 Ill. 2d 1, 24 (2000); quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991)). The first step in the analysis is to determine the statute's purpose in order to ascertain whether the statute "reasonably implement[s] that purpose." *Id.* at 268. This court reviews the constitutionality of a statute *de novo*. *People v. Eubanks*, 2019 IL 123525, ¶ 34.

¶ 19     In *People v. Maillet*, 2019 IL App (2d) 161114, the second district considered the same argument McCavitt raises in this appeal and found the statute did not violate substantive due

6

process. The court determined that the statute recognizes that persons have a heightened expectation of privacy in a restroom, protecting that expectation of privacy is an important governmental interest, and the statute's prohibition is substantially related to the governmental interest. *Id.* ¶ 38. The court distinguished *People v. Madrigal*, 241 Ill. 2d 463, 467 (2011), which considered the Identity Theft Law, which criminalized, in relevant part, the use of personal identification information to gain access to various enumerated information without the person's prior express permission. *Maillet*, 2019 IL App (2d) 161114, ¶ 46. The *Madrigal* court noted that innocuous behavior in which people engage every day, such as using someone's name to conduct a Google or Facebook search, was criminalized under the statute. *Madrigal*, 241 Ill. 2d at 471-72. That statute's infirmity was its lack of criminal intent. *Id.* at 474.

¶ 20        In contrast, the *Maillet* court considered section 26-4(a) as "far more narrowly suited to [its] purpose of protecting personal privacy" than the statute at issue in *Madrigal*. *Maillet*, 2019 IL App (2d) 161114, ¶ 49. The court determined that the unauthorized recording statute prohibits " ' "precise activities" ' " intended to be punished. *Id.* (quoting *Madrigal*, 241 Ill. 2d at 476; quoting *People v. Williams*, 235 Ill. 2d 178, 209 (2009)). The *Maillet* court rejected the same argument McCavitt makes that the statute lacks a criminal intent or knowledge requirement. *Id.* ¶ 50. The second district interpreted the statute to require the offender to know that the person recorded is in a place where he or she has a heightened expectation of privacy and that the person has not consented to the recording. *Id.*

¶ 21        We adopt the reasoning employed by the second district in *Maillet* and find that section 26-4(a) does not violate substantive due process. The purpose of the statute is to afford individuals "heightened privacy" in situations where they are likely to be partially or fully undressed, engaged in personal activities, and unlikely to expect that others are watching. Both Rachel G. and

7

Whitney S. testified that they did not consent to the recordings and were not aware they were being taped. Each woman stated they expected their bathroom activities would take place in private. The statutory prohibitions are suited to the purpose of protecting privacy in a location where individuals would have a heightened expectation of privacy. We find the trial court did not err when it denied McCavitt's claim that his substantive rights were violated.

¶ 22 The second issue is whether McCavitt was denied his right to a speedy trial. McCavitt maintains that he was not brought to trial until 124 days after his speedy trial demand and that the trial court erred when it denied his motion to dismiss based on speedy trial grounds. He rejects the State's assertion and the trial court's finding that he was in simultaneous custody triggering the 160-day speedy trial term. Rather, McCavitt assets the appropriate term was 120 days, and since he was not timely tried, his conviction must be vacated, and his case dismissed.

¶ 23 A criminal defendant in Illinois has both a constitutional and a statutory right to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5 (West 2016). The speedy trial statute provides, in relevant part, that a defendant must be tried within 120 days of being taken into custody unless the defendant causes the delay. 725 ILCS 5/103-5(a) (West 2016). When a defendant fails to object to the delay by making a demand for trial on the record, the delay is "considered to be agreed to by the defendant." *Id.* A defendant must be discharged from custody if not tried within the 120-day term. *Id.* § 103-5(d). This court reviews a trial court's determination on whether to dismiss charges based on a speedy trial violation for an abuse of discretion. *People v. Collins*, 382 Ill. App. 3d 149, 161 (2008).

¶ 24 The statute further provides that when a defendant is in simultaneous custody on more than one charge in the same county, he must be tried on one charge before the appropriate term and then "tried upon all of the remaining charges thus pending within 160 days from the date on which

8

judgment" is entered on the first charge. 725 ILCS 5/103-5(e) (West 2016). If the defendant is not tried within 160 days, the "charges shall be dismissed and barred for want of prosecution unless delay is occasioned by the defendant." *Id.* Finally, the statute provides that any delay caused by the defendant tolls the time to calculate the speedy trial term. *Id.* § 103-5(f).

¶ 25 To prove a violation of his statutory speedy trial right, a defendant must show he was not tried within the applicable period and he did not cause or contribute to the delays. *People v. Zeleny*, 396 Ill. App. 3d 917, 920 (2009) (citing *People v. Staten*, 159 Ill. 2d 419, 426 (1994)). A defendant waives his speedy trial right when he contributes to an actual delay by his affirmative act. *Id.* Where defense counsel expressly agrees to a continuance, the agreement " 'may be considered an affirmative act contributing to a delay which is attributable to the defendant.' " *People v. Mooney*, 2019 IL App (3d) 150607, ¶ 19 (quoting *People v. Kliner*, 185 Ill. 2d 81, 114 (1998)). Courts should construe the speedy trial statute liberally in favor of defendants. *Id.*

¶ 26 Neither the State nor McCavitt dispute that the bench trial took place on day 124 of McCavitt's speedy trial term. What is in dispute is whether section 103-5(a) or section 103-5(e) of the speedy trial statute applies. McCavitt looks to section 103-5(a) to demonstrate that the April 4 trial date was outside what he asserts was the applicable 120-day term. The State submits that the trial was timely under either section 103-5(a) or 103-5(e) of the speedy trial statute, arguing the delay from February 15 to April 4 was attributable to McCavitt in order to accommodate his request to change from a jury to a bench trial and that he was in simultaneous custody with a 160-day speedy trial term.

¶ 27 McCavitt was found guilty of the child pornography charges on July 14, 2016, and on August 25, 2016, McCavitt moved to exonerate his bond in the instant case, which the trial court granted effective *nunc pro tunc* to July 14, 2016. McCavitt was sentenced in the child pornography

9

case on December 1, 2017. At that hearing, the court sought a date for the parties to appear before Judge Lyons on the instant case. The parties agreed on February 15, 2018, for review, and February 26, 2018, for jury trial. The attorneys and the trial court discussed a sentencing issue in the child pornography case. Once that was resolved, defense counsel stated, "one more thing," and demanded trial on the instant case, arguing the trial date was not by agreement. On February 15, 2018, the parties appeared before Judge Lyons and McCavitt waived his jury trial right and again demanded a speedy trial. The trial court offered April 4, 2018, as a bench trial date, to which defense counsel replied, "that's actually good for me."

¶ 28    Prior to the start of the bench trial on April 4, 2018, McCavitt moved to dismiss on speedy trial grounds. McCavitt argued, as he does on appeal, that the 120-day term applied. In response, the State submits it had 160 days to try McCavitt on the instant case. The State submits in the alternative that McCavitt was timely tried under the 120-day term because the delays in setting the trial date were attributable to him. We find that McCavitt was timely tried under either the 120-day term or the 160-day term.

¶ 29    At the February 15, 2018, date, McCavitt reiterated his speedy trial demand, waived his jury trial right, and the matter was set for a bench trial. McCavitt's decision to have a bench trial late in the speedy trial term necessitated setting the bench trial at a date more than six weeks after the scheduled jury trial date. A delay may be attributable to a defendant when his actions cause the delay. *Zeleny*, 396 Ill. App. 3d at 921 (citing *People v. Patterson*, 392 Ill. App. 3d 461, 467 (2009)). In *People v. Johnson*, 122 Ill. App. 3d 636, 638 (1984), the court determined that the delay occasioned by the defendant's wavier of his jury trial right and subsequent motion to withdraw the waiver were attributable to him where he waived a jury two days before trial was scheduled to begin. Similarly, in *People v. Fosdick*, 36 Ill. 2d 524, 529-30 (1967), the court considered that the

10

delay was occasioned by the defendant where he filed a jury waiver on the last day of the speedy trial period when the case was on the jury call. McCavitt's decision to waive a jury trial delayed the trial setting. We find the delay between February 15 and April 4 was attributable to McCavitt and tolled the speedy trial term.

¶ 30     The delay is also attributable to McCavitt because he agreed to an April 4 date for a bench trial. After the February 26 jury trial date was negated by McCavitt's jury waiver, the trial court offered April 4 for the bench trial. Defense counsel responded, "That's actually good for me" and the bench trial was set for April 4. To preserve his speedy trial right, McCavitt was required to object to the trial setting to stop the term from tolling. See *People v. Brexton*, 2012 IL App (2d) 110606, ¶ 18. In *Brexton*, the reviewing court considered that a defendant's demands for a speedy trial that were made before the court proposed a trial date presumably outside the speedy trial term did not qualify as objections to the delay. *Id.* ¶ 23. As stated above, here, defense counsel not only failed to object to the April 4 trial setting as outside the speedy trial term, he also expressly agreed with the date, stating it worked well for him. Under this alternative basis, we find the speedy trial term was tolled by McCavitt's failure to object to the April 4 jury trial setting.

¶ 31     Even if we were to find McCavitt had not caused the delay, we would still reject his speedy trial claim. The State relies on and the trial court found applicable the 160-day term for defendants in simultaneous custody. McCavitt rejects that he was in simultaneous custody under section 103-5(e), maintaining that because he had been found guilty and sentenced in the child pornography case prior to exonerating his bond, he was not in custody on both sets of charges at the same time. He looks to the use of "charge" in the speedy trial statute as indicative that once he was convicted, he no longer had any charges pending against him and thus was not in simultaneous custody for speedy trial purposes. See 725 ILCS 5/102-8 (West 2016) (defining charge as "a written statement

11

presented to a court accusing a person of the commission of an offense and includes complaint, information and indictment").

¶ 32    The plain language of section 103-5(e) precludes McCavitt's argument. The statute does not differentiate between a defendant's status as charged and as convicted. It provides that a defendant should be tried on all the remaining charges after "judgment relative to the first charge thus prosecuted is rendered." Per the statutory language, the 160-day speedy trial term begins on the second charge only after judgment is entered against the defendant on the first charge. Thus, section 103-5(e) applies where the defendant has been found guilty but not yet sentenced as in the circumstances here. We agree with the trial court's conclusion and find McCavitt was in simultaneous custody on more than one case when he exonerated his bond. The April 4, 2018, trial was within the 160-day term under section 103-5(e). We find there was no speedy trial violation under this statutory provision either.

¶ 33    The third and final issue is whether the defendant received ineffective assistance of counsel. McCavitt argues that trial counsel was ineffective by failing to move to suppress the evidence that resulted from the warrantless search of his computer. He submits that the warrantless search violated his fourth amendment rights and that the good-faith exception to the warrant requirement does not apply.

¶ 34    A criminal defendant is entitled to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. A defendant is denied effective assistance of counsel where (1) counsel provided representation that fell below an objective standard of reasonableness and (2) counsel's defective representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When claiming ineffective assistance based on counsel's failure to file a motion to suppress, the defendant must demonstrate that there was a reasonable probability the

motion would have been granted and the outcome of the trial would have been different to establish the prejudice prong. *People v. Bew*, 228 Ill. 2d 122, 128-29 (2008). This court reviews a claim of ineffective assistance under a bifurcated standard; the court's factual findings will be upheld unless they are against the manifest weight of the evidence while the ultimate issue of whether counsel provided ineffective assistance is reviewed *de novo. People v. Berrier*, 362 Ill. App. 3d 1153, 1166-67 (2006).

¶ 35        Ineffective assistance of counsel claims should generally be reviewed on direct appeal except where the issue cannot be resolved because the record is incomplete or inadequate. *People v. Veach*, 2017 IL 120649, ¶ 46. Where the facts necessary to resolve an ineffective assistance claim are not in the record, collateral review is the appropriate vehicle to address them. *Bew*, 228 Ill. 2d at 135. In a collateral proceeding, both parties have "an opportunity to develop 'a factual record bearing precisely on the issue.' " *Id.* (quoting *Massaro v. United States*, 583 U.S. 500, 506 (2003)). Otherwise, a reviewing court would have to guess what defense counsel advised the defendant and counsel's strategy. *People v. Williams*, 2019 IL App (3d) 160412, ¶ 36. In those circumstances, the issue is better suited to be raised under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). *Bew*, 228 Ill. 2d at 135.

¶ 36        In McCavitt's first appeal, this court determined that the trial court erred in the child pornography case when it denied McCavitt's motion to suppress based on the search of his computer. *People v. McCavitt*, 2019 IL App (3d) 170830, ¶ 32. This court considered the propriety of the computer search and found the search was unlawful. *Id.* ¶ 1. As discussed in that case, the criminal proceedings for sexual assault and criminal aggravated sexual assault against McCavitt that triggered the seizure and search of his computer had concluded with an acquittal. *Id.* ¶ 5. At the time Feehan requested and obtained the EnCase file from Avery and conducted the search that

13

ultimately resulted in the instant charges, there were no criminal charges pending against McCavitt. *Id.* ¶ 25. The State was not entitled to maintain the EnCase files indefinitely. *Id.* Rather, the seized property should have been returned to McCavitt when the criminal proceedings ended. *Id.* ¶ 22. This court reversed and remanded the cause. *Id.* ¶ 32.

¶ 37 The same reasoning and disposition do not apply in the instant case. In the first appeal, the issue was the trial court's ruling on the defendant's motion to suppress. *Id.* ¶ 1. In this case, the issue is whether McCavitt received ineffective assistance of counsel based on counsel's failure to file a motion to suppress. Each issue relies on different facts for their resolution. What is adequate to determine the propriety of the court's ruling on the motion to suppress is not sufficient to resolve the ineffective assistance claim. The facts before this court are insufficient to allow us to determine McCavitt's ineffective assistance of counsel claim. The record reveals that defense counsel did not file a motion to suppress the evidence discovered in McCavitt's seized computer. The record does not, however, disclose why counsel opted to pass on filing the motion. On review, we are left to speculate about counsel's reasons.

¶ 38 Although we may sometimes determine that there is no reasonable trial strategy that would include failing to file a motion to suppress, the circumstances before us weigh against that determination. First, in the child pornography case, the trial court denied the motion to suppress on the exact issue raised here regarding an unlawful search and seizure of McCavitt's computer. Second, and more importantly, until this court reversed the trial court in the first appeal, there were not any cases instructing that suppression would be appropriate under the circumstances at play here. For those reasons, we find it is more appropriate to determine McCavitt's claim of ineffective assistance of counsel in a collateral proceeding where a factual record may be developed and McCavitt's claim may be fleshed out.

14

CONCLUSION

¶ 40          For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 41          Affirmed.

¶ 42          JUSTICE SCHMIDT, specially concurring:

¶ 43          I write separately to emphasize that this court incorrectly decided *People v. McCavitt* (*McCavitt I*), 2019 IL App (3d) 170830 (leave to appeal granted (May 27, 2020) No. 12550). The *McCavitt I* court found that the trial court erred in denying defendant's motion to suppress evidence in the child pornography case. This court determined that the officer unlawfully searched the copied hard drive after defendant's acquittal in the criminal sexual assault case. This court concluded that the State could not maintain a copy of defendant's hard drive indefinitely. *Id.* ¶ 25. Instead, this court held that the seized property should have been returned to defendant when the first criminal proceedings ended in defendant's acquittal. *Id. McCavitt I* is currently pending in the Illinois Supreme Court.

¶ 44          The relevant facts are as follows. On July 17, 2013, officers sought and obtained a warrant for the search of defendant's home in relation to an investigation of aggravated criminal sexual assault. The warrant authorized the seizure of, among other things, "any electronic media cable [*sic*] of video/audio recording," and "any electronic storage media capable of storing pictures, audio, or video." Officers seized defendant's computer tower during the execution of the search warrant. On July 24, 2013, officers sought and obtained a second search warrant to search and examine the computer's hard drive for the following: "[a]ny and all digital images including, but not limited to JPG, GIF, TIF, AVI, MOV, and MPEG Files." The search warrant listed the following offenses being investigated: aggravated criminal sexual assault, unlawful restraint, and unauthorized video recording. The search warrant also alleged that the initial search "recovered

videos display[ing] an unidentified female using the bathroom and taking a shower. The unidentified female appears to have no knowledge she was being recorded."

¶ 45    Detective Jeff Avery received defendant's computer and made a copy of defendant's hard drive. He conducted a forensic analysis of the hard drive. He archived the copy of the hard drive on his computer so that it could be retrieved in the event of an appeal.

¶ 46    As a result of the search, the State charged defendant with aggravated criminal sexual assault and criminal sexual assault. The trial resulted in defendant's acquittal on March 19, 2014.

¶ 47    On March 20, 2014, the Peoria Police Department initiated an investigation of defendant. As part of the investigation, Detective James Feehan contacted Avery and received the copy of defendant's hard drive. Feehan searched the hard drive for evidence of unlawful video recording that the warrant had originally identified in order to identify the victim. While searching the hard drive, Feehan discovered two images of what he believed to be child pornography. After finding this evidence, Feehan stopped searching and obtained a search warrant.

¶ 48    The State charged defendant with several counts of possession of child pornography. The trial court denied defendant's motion to suppress the evidence found on his hard drive in that case. A trial resulted in defendant being found guilty of several counts of possessing child pornography. As explained above (*supra* ¶ 43), this court reversed the denial of defendant's motion to suppress evidence.

¶ 49    Contrary to the decision in *McCavitt I*, Feehan had the right to review the copy of defendant's hard drive after his acquittal in the criminal sexual assault case. Feehan examined a *copy* of the hard drive. In other words, Feehan reviewed another police officer's working file. This is no different than a police officer taking a photograph in a home during the execution of a search warrant, then another police officer later reviewing the photograph and discovering something that

16

the first officer did not originally notice. In those circumstances, defendant has no right to demand the return of the photographs or require the officers to destroy the photographs. Those photographs are not defendant's property. The same is true here. Defendant had no reasonable expectation of privacy in a copy of the data that investigators created from lawfully seized evidence. See, *e.g.*, *United States v. Lutcza*, 76 M.J. 698 (2017). While defendant may have retained a privacy interest in his hard drive (his property), he did not retain a privacy interest in the copy of the hard drive (not defendant's property). Even assuming officers had a duty to return defendant's property upon his acquittal of criminal sexual assault, the copy of the hard drive is not defendant's property.

¶ 50 Given that Feehan had the right to examine the copy of the hard drive, his discovery of the two images of child pornography fell within the scope of the plain view doctrine. To satisfy the plain view doctrine: (1) the officer must be lawfully in the place where the seized item was in plain view; (2) the item's incriminating nature must have been immediately apparent; and (3) the officer had a lawful right of access to the object itself. See *Horton v. California*, 496 U.S. 128, 136-37 (1990).

¶ 51 The valid 2013 warrant authorized officers to examine defendant's hard drive for "[a]ny and all digital images including, but not limited to JPG, GIF, TIF, AVI, MOV, and MPEG Files." While searching these files for evidence of unauthorized video recording—as allowed by the warrant—Feehan inadvertently discovered what he perceived to be images of child pornography. The incriminating nature of the files was immediately apparent. Since Feehan lawfully searched the item where he located the child pornography, the evidence was properly seized under the plain view doctrine. See, *e.g.*, *United States v. Kearns*, 2006 WL 2668544 (N.D. Ga. 2006) (citing *Mapp v. Warden*, F.2d 1167, 1172 (2nd Cir. 1976). Therefore, the trial court in *McCavitt I* properly denied defendant's motion to suppress, and this court erred in reversing that decision.

17

¶ 52        *McCavitt I* is currently pending in our supreme court. The amicus brief filed in the supreme court in *McCavitt I*, argues that Feehan went beyond the scope of the 2013 warrant. The amicus brief notes that the 2013 warrant only permitted searches for evidence of sexual assault, unlawful restraint, and unauthorized video recording. According to the amicus brief, since the warrant only identified one victim, Feehan could only review files dated July 17, 2013 (the date of the alleged criminal sexual assault). One flaw is that the amicus brief ignores the fact that the warrant specifically alleged that the officers had already found evidence of a second unidentified victim— the victim of unauthorized video recording. Therefore, the warrant did not limit Feehan's examination of files to only those dated July 17, 2013. The other flaw in the brief is that it relies on a Colorado Supreme Court decision, which should not be followed. See *People v. Herrera*, 2015 CO 60.

¶ 53        In *Herrera*, police obtained a search warrant that authorized a search of the defendant's cellphone for text messages between the defendant and an individual named "Stazi" and for "indicia of ownership" of the cellphone. *Id.* ¶ 18. The officer executing the search warrant accessed a folder in the cellphone named "Faith Fallout" and reviewed the messages contained in the folder. *Id.* The Colorado Supreme Court first found that the folder itself fell outside the scope of the search warrant. The court reasoned that the warrant was overbroad in that it allowed the officers to "rummage through" the entirety of defendant's private information contained in his cellphone without limitation. *Id.* ¶ 19.

¶ 54        The court went on to reject the State's argument that messages contained in the "Faith Fallout" folder could be searched under the plain view doctrine. *Id.* ¶ 23. The court analogized the "Faith Fallout" folder to a physical closed container and concluded that the folder could not

18

reasonably contain messages between defendant and "Stazi" because the folder was named "Faith Fallout." *Id.*

¶ 55    The decision in *Herrera* should not be followed. Applying the logic of *Herrera* to a physical search, an officer would not be allowed to search a closed container if it is labeled "only legal materials." This is absurd. The same is true on a computer. It is absurd to prohibit a lawful search of a computer file simply because a defendant renamed the file "legal photograph." As the dissent correctly noted in *Herrera*,

> "the police had a lawful right of access to the Faith Fallout folder because it could have concealed the Stazi text messages, which were the subject of the warrant, thereby satisfying element three of the plain view doctrine. [Citation]. A reasonable officer could conclude that a folder containing text messages could contain the text messages between Herrera and Stazi. File names are easily manipulated, so it is objectively reasonable to think that text messages within the scope of the warrant could be found in the Faith Fallout folder. The folder was, therefore, a closed container 'of the type within which the items named in the warrant might reasonably be expected to be secreted.' [Citation]. Whether Herrera actually hid messages from Stazi in the Faith Fallout folder is irrelevant. It only matters that it was objectively reasonable for an officer to search the folder for text messages between Herrera and Stazi." *Id.* ¶ 46.

¶ 56    Despite the erroneous decision in *McCavitt I*, the majority in this case correctly affirmed the trial court's judgment. I also add that the facts in this case are distinguishable from this court's

decision in *McCavitt I*. Here, the 2013 complaint for search warrant explicitly identified the unauthorized video recordings that are the basis for the charged offense. Thus, it appears the officers had already identified this incriminating evidence when they originally searched defendant's home and computer.